1

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11                    EASTERN DISTRICT OF CALIFORNIA

12                            ----oo0oo----

13

14  MARK J. HANSEN, MONICA S.
    HANSEN, BERNIE L. HANSEN,
15  KELLY A. HANSEN, CARL J.
    BARTALDO, DONALD R. LANCASTER,
16  CONSTANCE A. LANCASTER, SHASTA
    GENERAL ENGINEERING, INC., a
17  California Corporation,
                                      NO. CIV. S-02-0850 FCD GGH
18          Plaintiffs,

19      v.                            MEMORANDUM AND ORDER

20  ARTHUR SCHUBERT, JOYCE BARAL,
    BERNIE RENTERIA, R. GARCIA,
21  GREG A. ZIEGLER, VINCENT
    ZAMBRANA, STEPHANIE McCALL,
22  SHON HILL, CRAIG BURSON, K.R.
    ERICSON,
23
            Defendants.
24                            ----oo0oo----
25

26      This matter is before the court on defendants' Arthur

27  Schubert, Greg A. Ziegler, Vincent Zambrana, Stephanie McCall,

28

and Craig Burson's ("defendants")[1] motion for summary judgment, or, in the alternative, summary adjudication pursuant to Federal Rule of Civil Procedure 56.[2]  For the reasons set forth below,[3] defendants' motion for summary judgment is GRANTED in part and DENIED in part.

### BACKGROUND[4]

This case arises out of a search of plaintiffs' residence and business pursuant to a search warrant pertaining to allegations of tax evasion against plaintiffs.  Plaintiffs assert various violations of their constitutional rights based upon the issuance and execution of the search warrant.

Defendant Schubert was a criminal investigator with the California Department of Employment Development ("EDD").  (SDF at

---

[1]    Plaintiffs voluntarily dismissed defendants Joyce Baral, Bernie Renteria, R. Garcia, Shon Hill, K.R. Ericson.  See Docket Nos. 85, 87-88.

[2]    Any further references to a "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise indicated.

[3]    Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

[4]    For the purposes of this motion, the court recounts plaintiffs' version of the facts, unless otherwise noted.  (See Pls.' Separate Stmt. of Disp. & Undisp. Facts ("SDF"), filed Aug. 15, 2006).
    Plaintiffs object to various pieces of evidence that defendants present in support of their motion.  However, said evidence is immaterial to the court's analysis of the summary judgment motion.
    Defendants object to plaintiffs' late filing of various declarations and an amended separate statement of disputed and undisputed facts.  To the extent that such filings include evidence that was referred to, but inadvertently omitted from the original filings, the court considers such evidence.  However, to the extent plaintiffs present new evidence in such filings, after this motion was submitted and without leave of court, the court does not consider such evidence.

2, ¶ 1).  On August 9, 2000, Schubert received a call from a confidential informant ("CI"), reporting what he believed to be an illegal tax evasion payroll scheme involving Shasta General Engineering, Inc. ("SGE").  (SDF at 2, ¶ 4).  According to the informant, SGE was issuing two checks to each employee, one for wages and one for purported equipment rental.  (SDF at 2, ¶ 5).  Based upon his training and experience, Schubert believed that the scheme, if true, was suspicious and warranted further investigation.  (SDF at 2, ¶ 6).

Schubert conducted background checks on the informant, including a criminal history and DMV records check.  (SDF at 3, ¶ 7).  He discovered that the informant was a local businessman with no prior criminal history and no investigations or charges pending.  (SDF at 3, ¶ 7).  He also suspected, and later confirmed, that the CI was a business competitor of SGE who was paying more for workers' compensation insurance than SGE because of SGE's payment allocations.  (See Statement of Probable Cause in Supp. of Search Warrant ("Affidavit"), Ex. A to Decl. of Arthur Schubert in Supp. of Mot. for Summ. J. ("Schubert Decl."), filed July 31, 2006, at 4-5).

On April 20, 2001, at least six California Highway Patrol ("CHP") officers, several investigators from the Employment Development Department ("EDD"), employees of the Franchise tax board, and at least two deputy district attorneys entered and searched the Hansen residence, the premises of Shasta General Engineering, Inc. ("SGE"), and, later that morning, the Lancaster residence.  (SDF at 9, ¶ 1).  The search was executed pursuant to a search warrant pertaining to allegations of tax evasion against

plaintiffs.  (See SDF at 4, ¶¶ 11-13).  The CHP officers
approached with guns drawn.  (SDF at 9, ¶ 2).  Plaintiff Monica
Hansen, who was the manager of SGE and ran the company from her
residence, was the first to see the CHP officers.  (SDF at 9, ¶
3).  The officers entered the main Hansen residence.  (SDF at 9,
¶ 6).  The officers then approached plaintiff Bernie Hansen's
room and called out to him.  (SDF at 10, ¶ 8).  Bernie Hansen did
not respond because he was asleep.  (SDF at 10, ¶ 8).  The
officers kicked the door in, dragged him out of bed, and
handcuffed him.  (SDF at 10, ¶ 9).  They pushed him up against
his entertainment center and placed a shotgun against the back of
his neck.  (SDF at 10, ¶ 9).  Bernie Hansen remained in handcuffs
for at least an hour.  (SDF at 11, ¶ 16).

Plaintiffs Kelly Hansen and Carl J. ("CJ") Bartaldo lived in
an apartment in a detached section of the Hansen residence.  (SDF
at 10, ¶ 10).  Kelly Hansen woke up to loud noises and banging on
her apartment door.  (SDF at 10, ¶ 10).  As she came to the door,
it was pushed in toward her, and she raised her hand to stop the
door from hitting her.  (SDF at 10, ¶ 10).  Defendant Zambrana
pulled her through the doorway, and ripped her top, leaving her
breast exposed.  (SDF at 10, ¶ 10).  Despite repeated requests,
Kelly Hansen was not allowed to change her top for several hours.
(SDF at 11, ¶ 18-19).

Plaintiffs Monica Hansen, Kelly Hansen, Bernie Hansen, and
CJ Bartaldo were eventually gathered together and ordered to sit
at the dining room table.  (Decl. Of Bernie Hansen ("B. Hansen
Decl."), filed Aug. 15, 2006, ¶ 3).  No one ever informed them
that they were free to leave, with the exception of Monica

4

Hansen, who was told after several hours that she was free to leave. (SDF at 11, ¶ 15). Plaintiffs were also prevented from taking telephone calls during the execution of the search warrant. (SDF at 11, ¶ 20).

In executing the search warrant, the officers searched through the Hansens' home, looking though mail, looking in the freezer, going though photo albums, going through drawers, looking under mattresses, and disturbing a crematory urn. (SDF at 11, ¶ 21). The officers removed sixty-three boxes of evidence from the Hansen residence. (SDF at 12, ¶ 28).

That same day, CHP and EDD officers also searched the Lancaster residence, where only plaintiff Constance Lancaster was home. (SDF at 11, ¶ 24). Constance Lancaster was asked to sit at the dining room table. (Pls.' Supplemental Responses to Defs.' Interrogatories, Ex. 14 to Decl. of Michael S. Sorgen ("Sorgen Decl."), filed Aug. 15, 2006, at 18). When she needed to use the restroom, she was escorted by the police officer. (Id. at 19). The officers searched various parts of her home, including her underwear drawer. (Id. at 19-21).

Plaintiffs assert claims for relief for violations of their federal civil rights under 42 U.S.C. § 1983.[5] Specifically,

---

[5]     Plaintiffs assert that defendants' motion does not challenge their Supplement Complaint, filed March 8, 2005, or any of their state claims set forth in their Second Amended Complaint, filed September 16, 2002. The Supplemental Complaint added factual allegations and the § 1983 claim against defendants for retaliating against plaintiffs for filing this suit. Plaintiffs' state law claims set forth in the Second Amended Complaint were dismissed with prejudice by this court's Memorandum and Order, filed November 4, 2002. As such, the only remaining claims in this action are plaintiffs' § 1983 claims.
(continued...)

plaintiffs assert that (1) there was insufficient probable cause to support the issuance of a search warrant; (2) plaintiffs were unlawfully seized during the search; (3) the officers exceeded the scope of the search warrant; (4) the officers used excessive force in executing the warrant; and (5) defendants retaliated against them for filing this action.[6]

**STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

---

[5](...continued)
    Defendants' motion does not address plaintiffs' claims for retaliation under § 1983.  Therefore, the court does not address the merits of this claim.

[6]    In their opposition, plaintiffs also argue that the warrant "was so vastly overbroad that it violated plaintiffs' rights."  (Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Opp'n"), filed Aug. 15, 2006, at 17).  Plaintiffs neither asserted this claim in their Second Amended Complaint nor in their Supplemental Complaint.  Further, plaintiffs did not seek leave to amend their complaint to add such a claim.  As such, the court will not address the merits of this claim.

1   in reliance solely on the 'pleadings, depositions, answers to

2   interrogatories, and admissions on file.'" Id. at 324.  Indeed,

3   summary judgment should be entered against a party who fails to

4   make a showing sufficient to establish the existence of an

5   element essential to that party's case, and on which that party

6   will bear the burden of proof at trial.  Id. at 322.  In such a

7   circumstance, summary judgment should be granted, "so long as

8   whatever is before the district court demonstrates that the

9   standard for entry of summary judgment, as set forth in Rule

10  56(c), is satisfied." Id. at 323.

11      If the moving party meets its initial responsibility, the

12  burden then shifts to the opposing party to establish that a

13  genuine issue as to any material fact actually does exist.

14  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

15  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

16  253, 288-289 (1968).  In attempting to establish the existence of

17  this factual dispute, the opposing party may not rely upon the

18  denials of its pleadings, but is required to tender evidence of

19  specific facts in the form of affidavits, and/or admissible

20  discovery material, in support of its contention that the dispute

21  exists.  Fed. R. Civ. P. 56(e).  The opposing party must

22  demonstrate that the fact in contention is material, i.e., a fact

23  that might affect the outcome of the suit under the governing

24  law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986),

25  and that the dispute is genuine, i.e., the evidence is such that

26  a reasonable jury could return a verdict for the nonmoving party,

27  Id. at 251-52.

28  /////

1    In the endeavor to establish the existence of a factual

2  dispute, the opposing party need not establish a material issue

3  of fact conclusively in its favor.  It is sufficient that "the

4  claimed factual dispute be shown to require a jury or judge to

5  resolve the parties' differing versions of the truth at trial."

6  First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in

8  order to see whether there is a genuine need for trial.'"

9  Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory

10 committee's note on 1963 amendments).

11   In resolving the summary judgment motion, the court examines

12 the pleadings, depositions, answers to interrogatories, and

13 admissions on file, together with the affidavits, if any.  Rule

14 56(c); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir.

15 1982).  The evidence of the opposing party is to be believed, and

16 all reasonable inferences that may be drawn from the facts placed

17 before the court must be drawn in favor of the opposing party.

18 Anderson, 477 U.S. at 255.  Nevertheless, inferences are not

19 drawn out of the air, and it is the opposing party's obligation

20 to produce a factual predicate from which the inference may be

21 drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

22 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

23   Finally, to demonstrate a genuine issue, the opposing party

24 "must do more than simply show that there is some metaphysical

25 doubt as to the material facts. . . . Where the record taken as a

26 whole could not lead a rational trier of fact to find for the

27 nonmoving party, there is no 'genuine issue for trial.'"

28 Matsushita, 475 U.S. at 586-87, 106 S. Ct. at 1356.

**ANALYSIS**

**I.    42 U.S.C. § 1983**

42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  Section 1983 confers no substantive rights itself, but rather, "provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

**A.    Probable Cause Sufficient to Obtain a Search Warrant**

Plaintiffs' bring a claim for relief under 42 U.S.C. § 1983 based upon their allegations that no probable cause existed for issuance of the search warrant.  Specifically, plaintiffs assert that defendant Schubert (1) failed to establish the reliability of the confidential informant; (2) failed to bring forth information that corroborates the allegations of illegal activity by the confidential informant; and (3) failed to disclose material facts in his statement of probable cause in support of the search warrant.

The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits searches and arrests without probable cause.  Beck v. Ohio, 379 U.S. 89, 90-91 (1964); McKenzie v. Lamb, 738 F.2d 1005, 1007-08 (9th Cir. 1984).  "The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime.'"

9

<u>Maryland v. Pringle</u>, 540 U.S. 366, 370 (2003) (quoting <u>Brinegar</u> <u>v. United States</u>, 338 U.S. 160, 176 (1949)).  However, in reviewing the sufficiency of an affidavit in support of a search warrant, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts.  A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant . . . ."  <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983) (internal quotations and citations omitted).  The Supreme Court has further explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.

<u>Id.</u> at 238-39 (quoting <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960)).  "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity . . . innocent behavior frequently will provide the basis for a showing of probable cause."  <u>Id.</u> at 245; <u>see also</u> <u>Dawson v. City of Seattle</u>, 435 F.3d 1054, 1062 (9th Cir. 2006) (reviewing a judge's finding of probable cause for the issuance of a search warrant for "clear error"); <u>United States v. Meek</u>, 366 F.3d 705, 712 (9th Cir. 2004) (according "great deference" to

10

the issuing judge's findings).  In this context, probable cause

exists if "the evidence, considered by the magistrate, viewed as

a whole, would permit a reasonable person to believe that a

search . . . had a fair probability of revealing evidence."

Dawson, 435 F.3d at 1062.

Plaintiffs contend that the affidavit supporting the search

warrant did not establish the reliability of the confidential

informant because (1) as a competitor of SGE, the informant may

have had a financial motive for initiating an investigation of

SGE; (2) the affidavit did not contain sufficient underlying

circumstances upon which the informant based his beliefs; and (3)

additional information in the affidavit did not corroborate the

allegations of illegal activity.  Defendants concede that

assessing the reliability of hearsay information is one piece of

evaluating whether "probable cause" exists for the issuance of a

warrant.  However, defendants correctly point out that there is

no particular test for reliability.  Rather, where "an

unquestionably honest citizen comes forward with a report of

criminal activity – which if fabricated would subject him to

criminal liability" – the Supreme Court has found rigorous

scrutiny of the basis of his knowledge unnecessary.  Gates, 462

U.S. at 238.  "Even if we entertain some doubt as to an

informant's motives, his explicit and detailed description of

alleged wrongdoing, along with a statement that the event was

observed firsthand, entitles his tip to greater weight than might

otherwise be the case."  Id. at 234.  "It is enough, for purposes

of assessing probable cause, that corroboration through other

sources of information reduced the chances of a reckless or

prevaricating tale, thus providing a substantial basis for crediting the hearsay." <u>Id.</u> at 244-45 (internal quotations and citation omitted).

In this case, the citizen informant told defendant Schubert that he personally had been employed by SGE and plaintiffs from 1996 through 1999. (<u>See</u> Affidavit ¶ 26). The informant was a former supervisor at SGE. (Affidavit ¶ 14). The informant personally had received two pay checks each week from SGE which he explained were his wages divided in half. (Affidavit ¶ 14). He explained that the first check was for half his regular wages, and that the second check was for also for earnings, but "disguised as a reimbursement to the employee for the rental of non-existent tools and equipment." (Affidavit ¶ 14). The informant further stated that he had friends who still worked for SGE and believed that the company was still engaged in the same practice. (Affidavit ¶ 22).

Defendants point to other factors indicating the reliability of the information received. Schubert spoke to the informant on several different occasions, both in person and by telephone; this was not a one-time anonymous tip. (<u>See</u> Affidavit ¶¶ 13, 14, 22, 26). The information provided to defendant Schubert was personally observed and known to the informant. (<u>See</u> Affidavit ¶¶ 14, 22, 26). The informant provided valid identification (although he did not want his name disclosed because of safety concerns). (Affidavit ¶ 14). Schubert conducted a CLETS criminal background check and a DMV records check on the informant and determined that he was a local business man with no prior criminal history and no investigations or charges pending.

12

(Affidavit ¶ 14).  The informant also reduced his allegations to writing and signed them under penalty of perjury thereby subjecting himself to criminal penalties if he was lying. (Affidavit ¶ 26).

In addition, defendant Schubert confirmed much of the information provided by the informant through independent sources.  He conducted public records searches and verified the corporate status of SGE, the identities of the principals and the locations of its various business operations.  (See Affidavit ¶ 13).  Everything he found confirmed the information provided by the informant.  The informant also provided the locations of current SGE field operations.  (See Affidavit ¶ 14).  Defendant Schubert went to those locations and personally observed that SGE crews were, in fact, at those sites.  (See Affidavit ¶ 15). Schubert's observations not only confirmed that the informant was correct as to SGE's business operations, but also that his information was current.

At the locations of current SGE field operations, defendant Schubert personally observed that trucks and other equipment in the field bore "Shasta General Engineering" signs.  (Affidavit ¶ 15).  He observed that when crew members needed equipment, they went to the "Shasta General Engineering" trucks to obtain it. (Affidavit ¶ 15).  Thus, it appeared to Schubert that the employees were using tools and equipment provided by SGE, not their own tools such that they would be entitled to a separate check from SGE for "equipment rental."  (Affidavit ¶ 15).

Plaintiffs claim that the company name on the side of trucks provides no basis for inferring the ownership of the vehicle or

1  the equipment contained therein.  However, a reasonable person
2  could fairly infer such ownership.  Likewise, from observing
3  employees going to the SGE trucks to get tools and equipment, a
4  reasonable person could fairly infer that the tools kept in the
5  SGE trucks belonged to SGE.  It was not necessary that Schubert
6  be correct nor that his opinions and conclusions be accurate
7  "more likely than not."  See Dawson, 435 F.3d at 1062.  A "fair
8  probability" was all that was required.  Id.

9       Likewise, Schubert did not merely rely on the informant or
10 his own opinions regarding the legality of the payroll scheme.
11 Schubert also consulted with Special Agent ("SA") Baral from the
12 California Franchise Tax Board.  (Affidavit ¶¶ 28-33).  SA Baral
13 was a sworn peace officer and tax auditor.  (Affidavit ¶ 27;
14 Schubert Decl. ¶ 11).  She had substantial experience in
15 investigating suspected tax fraud and tax evasion cases.
16 (Affidavit ¶ 29).  SA Baral provided copies of SGE's corporate
17 tax returns and supporting documents that had been signed and
18 submitted by plaintiff Monica Hansen.  (Affidavit ¶ 30).  SA
19 Baral expressed her opinion to Schubert that if SGE was involved
20 in the payroll scheme as suspected, then Mark and Monica Hansen,
21 as well as their accountant Mitch Isner, would have been guilty
22 of felony tax fraud and willfully aiding or assisting in the
23 preparation of fraudulent returns.  (Affidavit ¶ 31).

24      For these reasons, the "totality of the circumstances,"
25 which included information from the informant, evidence Schubert
26 independently derived from his own investigation and the opinions
27 he obtained from legal experts, there was a "substantial basis"
28 for the judge's determination that "probable cause" existed to

issue a search warrant so that the matter could be investigated further.

However, plaintiffs argue that defendant Schubert should have also included in his affidavit (1) a statement that the law allowed allocation of employee payment between wages and employee business expenses; (2) that he failed to speak Jennifer Stuhr, an auditor for the EDD; and (3) that he never actually spoke to SGE employees or ex-employees.[7]  Plaintiffs assert that these omissions amount to judicial deception.

"It is clearly established that judicial deception may not be employed to obtain a search warrant." Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  To support a § 1983 claim for judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002); Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir. 1995) (stating that to survive summary judgment plaintiff "must make a substantial showing of deliberate falsehood or reckless disregard for the truth and establish that, but for the dishonesty, the challenged action would not have occurred") (quotations and citations omitted).  The court determines the materiality of the alleged

---

[7]   To the extent that plaintiffs assert that Schubert (1) failed to disclose that the informant was believed to be a business competitor who had some motive to try to harm their business; (2) failed to disclose that the information provided by the informant was hearsay from friends who still worked at SGE; and (3) failed to disclose that he excluded 16 prior employees from his analysis of whether employees leaving SGE doubled their reportable wages, such facts were disclosed in the affidavit. (Affidavit ¶¶ 13, 22, 25).

15

false statements or omissions.  <u>Butler v. Elle</u>, 281 F.3d 1014, 1024 (9th Cir. 2002).

The court finds that the alleged omissions in this case were not material to the issuance of the search warrant.  As to plaintiffs' first contention that Schubert omitted that an employer could legally allocate employee payment between wages and business expenses, the affidavit makes clear that it was not the legitimate implementation of such a payment scheme that was at issue.  Rather, the affidavit of probable cause relates to probable cause of whether SGE's used such allocation where there were no business expenses in an effort to evade paying workers' compensation insurance premiums.  The affidavit sets forth that the CI told Schubert that SGE was issuing two pay checks per week, one for half the earned wages and one for the rental of *non-existent* tools and equipment.  (Affidavit ¶ 14).  Therefore, a statement that the legitimate use of such payment allocation is legal is irrelevant to the circumstances set forth in the affidavit.

Plaintiffs also contend that Schubert should have disclosed that he did not consult with Stuhr, the auditor for the EDD. However, defendant Schubert consulted with Special Agent Baral of the California Franchise Board, who advised him that if SGE paid employees for personal service, but disguised it as equipment rental, such actions would be in violation of the California Revenue and Tax Codes.  (Affidavit ¶ 31).  Plaintiffs assert that the omission of the failure to consult with Stuhr was material because Stuhr stated in her deposition that such a payment scheme

is not illegal.[8]  However, as set forth above, the legality of a
legitimate payment allocation between payment for services and
equipment rental was not at issue in the affidavit; rather, at
issue was whether there was probable cause that SGE was evading
taxes by paying employees for *non-existent* equipment rental.
Defendant Schubert did not affirmatively misrepresent or imply in
his affidavit that he did not consult with an auditor for the
EDD.  Further, he stated in his affidavit that he consulted with
a Special Agent with the California Franchise Board, who rendered
an opinion based in part upon SGE's corporation income tax
returns for tax years 1997, 1998, and 1999.  Therefore, any
failure to disclose that Schubert did not speak to an EDD auditor
was irrelevant to the issuance of the search warrant.[9]

---

[8]     None of the deposition testimony included by plaintiffs
includes such a statement.  Further, Stuhr testified in her
deposition that after a review of the records, she came to the
conclusion that the Hansens underpaid their taxes.  (Dep. of
Jennifer Stuhr ("Stuhr Dep."), Ex. 7 to Sorgen Decl).  However,
as set forth, *infra*, even if Stuhr made this statement, it is
irrelevant to the issuance of the search warrant.

[9]     Plaintiffs citation to the Ninth Circuit's decision in
Butler is unavailing due to the factual differences between that
case and the one at hand.  In Butler, the investigator failed to
inform the magistrate judge that he did not complete his search
because he never searched the database for plaintiff's full name
or the correct name of his company, both of which he had access
to at the time he submitted the affidavit.  281 F.2d at 1025.
The investigator failed to inform the magistrate judge that the
taxes may have actually been paid.  Id.  Further, the Ninth
Circuit also noted in its analysis that the Idaho state appellate
court had overruled the state court magistrate judge's finding of
probable cause, which had necessarily influences the district
court's analysis of the sufficiency of the warrant.  Id. at 26.

None of the factors in Butler are present in this case.
There is no evidence that defendant Schubert failed to conduct an
adequate investigation prior to submitting his affidavit of
probable cause.  Likewise, in this case, the judge's
determination of probable cause has not been overturned.
(continued...)

17

1    Finally, plaintiffs contend that defendant Schubert should

2  have specifically disclosed in his affidavit that he did not

3  actually speak to SGE employees or ex-employees, other than the

4  confidential informant.  In his affidavit, defendant Schubert set

5  forth a detailed account of his investigation.  He also set forth

6  a detailed account of his conversations with the confidential

7  informant, who was a former employee of SGE.  A review of the

8  affidavit and the investigation by Schubert as described therein

9  makes clear that Schubert did not speak to SGE employees or ex-

10  employees, other than the CI.  The failure to explicitly state

11  that Schubert did not do so does not render the affidavit in any

12  way misleading.  Therefore, this omission was immaterial to the

13  issuance of the search warrant.

14    Because under the totality of the circumstances there was a

15  substantial basis for the judge's determination that probable

16  cause existed to issue a search warrant, and because any

17  omissions in the affidavit were immaterial to the issuance of the

18  search warrant, defendants'[10] motion for summary judgment

19  regarding plaintiffs' claim that no probable cause existed for

20  issuance of the search warrant is GRANTED.

21    **B.   Unlawful Seizure During the Search**

22    Plaintiffs claim that their Fourth Amendment rights were

23  violated when they were unlawfully seized during the execution of

24

25    [9](...continued)
Therefore, plaintiffs' citation to <u>Butler</u> is not persuasive.

26    [10]    There is no dispute that defendant Schubert was the
27  only defendant who was personally involved in the preliminary
investigation up to the point when the warrant was actually
28  obtained.  Therefore, none of the other defendants can be held
liable for acts occurring prior to the issuance of the warrant.

1   the search warrant.  Specifically, plaintiffs assert that (1) the

2   officers displayed their weapons and touched plaintiffs in order

3   to move them to the living room; (2) Monica Hansen, Kelly Hansen,

4   and Bernie Hansen were all forced to remain at the living room

5   table for several hours and they were not told that they were

6   free to leave; (3) Connie Lancaster was told that she had to

7   remain in the living room; (4) Connie Lancaster was escorted to

8   the bathroom; and (5) Monica Hansen was not allowed to answer the

9   telephone during the entire period of the search.[11]

10      A person has been "seized" with the meaning of the Fourth

11  Amendment "only when, by means of physical force or a show of

12  authority, his freedom of movement is restrained."  United States

13  v. Mendenhall, 446 U.S. 544, 554 (1980).  However, it has long

14  been established that police officers executing a search warrant

15  may detain the occupants of the building or place to be searched.

16  See Michigan v. Summers, 452 U.S. 692, 705 (1981) ("[F]or Fourth

17  Amendment purposes, we hold that a warrant to search for

---

19      [11]   Plaintiff Monica Hansen also asserts for the first time
20  in plaintiffs' opposition that she twice asked for an attorney
    and was told that she did not have a right to an attorney nor did
21  she need an attorney.  The "right to counsel attaches only at or
    after the time that adversary judicial proceedings have been
22  initiated against him."  Kirby v. Illinois, 231 F.3d 663, 688
    (1977).  To the extent that plaintiff is attempting to assert a
23  claim based upon the failure to be afforded counsel after the
    request for one during a custodial interrogation, such a claim
24  would be cognizable under the Fifth Amendment.  See Miranda v.
    Arizona, 384 U.S. 436, 444 (1966).  However, no such claim was
25  alleged in any of plaintiffs' filed amended or supplemental
    complaints.

26
        Plaintiffs also contend that Kelly Hansen was forbidden
27  from changing her ripped shirt for two hours and that Bernie
    Hansen was forced to remain in handcuffs for at least an hour.
28  The court will address these assertions below in its discussion
    of plaintiffs' claims for excessive force.

1  contraband founded on probable cause implicitly carries with it

2  the limited authority to detain the occupants of the premises

3  while a proper search is conducted."); Dawson, 435 F.3d at 1065

4  (applying the doctrine of Summers "to all searches upon probable

5  cause, not just searches for contraband"); Ganwich v. Knapp, 319

6  F.3d 1115, 1120 (9th Cir. 2003) (upholding detention of

7  business's employees in search of business).  The United States

8  Supreme Court has held that "[a]n officer's authority to detain

9  incident to a search is *categorical*; it does not depend on the

10 "quantum of proof justifying detention of the extent of the

11 intrusion to be imposed by the seizure."  Muehler v. Mena, 544

12 U.S. 93, 98 (2005) (emphasis added).  The Ninth Circuit has

13 interpreted the Supreme Court's language "to mean that the

14 duration of a detention may be coextensive with the period of a

15 search, and require no further justification."  Dawson, 435 F.3d

16 at 1066.  The Ninth Circuit has recognized that detention of a

17 building's occupants during a search furthers at least three law

18 enforcement interests: (1) "detention prevents a suspect from

19 fleeing before the police discover contraband;" (2) "detention

20 minimizes the risk that an officer or an occupant might be harmed

21 during the search;" and (3) "detention often expedites a search."

22 Id. (citations omitted).  However, the police do not have

23 "unfettered authority to detain a building's occupants in any way

24 they see fit;" the officer must conduct the detention in a

25 reasonable manner.  Id. (citing Muehler, 544 U.S. 93).

26     Accepting plaintiffs' assertion that they were not told they

27 were free to leave as true, the officers executing the warrant

28 had the categorical right to detain plaintiffs for the entire

1    duration of the search.  In this case, defendants present

2    undisputed evidence that the officers executing the warrant had

3    information that the Hansens had multiple registered weapons,[12]

4    that Mark Hansen had previously resisted arrest, and that there

5    were dogs kept on the premises.  (ROSS at 9, ¶ 1).[13]  As such,

6    the law enforcement interests in safely and effectively

7    conducting the search of the Hansen premises for evidence of tax

8    evasion justified the detention of plaintiffs during the search.

9    See Dawson, 435 F.3d at 1066 (finding that detention of building

10   tenants was reasonable where, inter alia, the owner of the

11   boardinghouses was associated with a man who had a violent

12   criminal history).  For these same reasons, it was reasonable for

13   the police to enter the premises aggressively and drawing their

14   sidearms, as was indicated by plaintiffs' testimony, would not

15   render the detention unreasonable.  See id. at 1068 (holding that

16   entering aggressively and drawing sidearms did not render the

17   detention unreasonable where the police had reason to believe

18   that an associate of the building owner might violently resist

19   the inspection team or their police escorts).  Further, it was

20   not unreasonable for the officers to keep plaintiffs at the

21   dining room table or the living room couch for the duration of

22   the search in order to facilitate the inspection and its

23   completion.  See id.  These precautions prevented any of the

24

25       [12]  The officers discovered an unregistered automatic
     assault rifle in Kelly Hansen's room as a result of the search.
26   (Defs.' Reply to SDF ("RUF"), filed Aug. 25, 2006, at 10, ¶ 6).
     The officers also located several other weapons during their
27   search of the home.  (RUF at 10, ¶ 7).

28       [13]  Plaintiffs deny this statement, but cite to no evidence
     supporting their denial.

plaintiffs from fleeing in the event that incriminating evidence was found and minimized the risk of harm to officers by ensuring that none of the employees were able to obtain a weapon.  See Ganwich, 319 F.3d at 1120.

Plaintiff Constance Lancaster claims that she was unreasonably seized because she had to remain in the living room and because she was escorted when she had to use the bathroom. As set forth above, these precautions were not unreasonable because they served the important law enforcement interests of preventing plaintiff from fleeing in the event that incriminating evidence was found, preventing plaintiff from destroying evidence, and preventing plaintiff from obtaining a weapon. Further, defendants present evidence that the officers brought plaintiff both water and coffee, and that she perceived them to be concerned about her because they kept asking her if she was okay.  (Dep. of Constance Lancaster ("Lancaster Dep."), Ex. B to Decl. of Stephen J. Egan in Supp. of Mot. for Summ. J., filed July 31, 2006, 48:23-49:8).

Plaintiff Monica Hansen, citing the Ninth Circuit's decision in Ganwich, also contends that her rights were violated because she was not allowed to use the telephone during the search.  319 F.3d 1115.  In Ganwich, the Ninth Circuit restated the rule that "officers may prevent temporary detainees from using a telephone only so long as that restriction is 'carefully tailored to its underlying justification.'"  Id. at 1123 (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)).  The court determined that it was unreasonable for officers searching a business to tell employees that they could not use a phone more than an hour after

1  the premises had been secured.  <u>Id.</u>  In that case, there was no

2  threat that the employees would use the phone to warn others or

3  to destroy evidence.  <u>Id.</u>  The officers had already released some

4  of the employees, and therefore, if others were going to be

5  warned, the inability to use the telephone was not going to

6  prevent such communication.  <u>Id.</u>  Finally, the court noted that

7  the interest in preventing plaintiffs from making a phone call

8  was outweighed by plaintiffs' stronger interests in contacting

9  relatives because certain plaintiffs needed to arrange for the

10  care of their children or to explain their apparent

11  disappearance.  <u>Id.</u>

12      The facts of this case present circumstances that were not

13  present in <u>Ganwich</u>.  Mark Hansen was one of the primary persons

14  under investigation.  He was not at the home and his whereabouts

15  were unknown.  Officers were concerned that the Hansen family

16  members would try to contact him so that he could flee, destroy

17  evidence and/or attempt to harm the officers.  Officers were

18  already aware that Mark Hansen was known to have weapons and had

19  previously resisted arrest.  Further, the confidential informant

20  had provided information that Mark Hansen was a "hot head" who

21  had been in several physical fights with employees and others.

22  (Schubert Decl. ¶ 35).  Therefore, it was reasonable for the

23  officers to prevent the Hansens from using the phone during the

24  duration of the search.  Further, in this case, plaintiffs have

25  presented no countervailing interests such as the need to arrange

26  for childcare or to explain an absence to a relative, as was

27  persuasive in <u>Ganwich</u>.

28  /////

23

1   For the reasons set forth above, plaintiffs have failed to

2   demonstrate any triable issues of material fact in support of

3   their claims that they were subjected to an unlawful seizure

4   during the search.  Therefore, defendants' motion for summary

5   judgment regarding plaintiffs' claim that they were unlawfully

6   seized is GRANTED.

7   **C.   Scope of the Search Warrant**

8   Plaintiffs argue that there are triable issues of fact

9   regarding whether the search violated their Fourth Amendment

10  rights because it exceeded the scope of the warrant.

11  Specifically, plaintiffs contend that officers unreasonably

12  searched in several locations which could not plausibly hold

13  evidence related to the crime of tax evasion, such as a crematory

14  urn, a medicine cabinet, the freezer, under mattresses, in

15  drawers, the mail, and photo albums.[14]

16  It is well-established that the Fourth Amendment prevents

17  "general, exploratory searches and indiscriminate rummaging

18  through a person's belongings."  <u>United States v. Mann</u>, 389 F.3d

19  _____

20  [14]   Plaintiffs alleged in their Complaint that defendants
    exceeded the scope of the search warrant by searching Kelly
21  Hansen's C.J. Bartaldo's cars, which were not authorized by the
    search warrant.  Although raised by defendants in their motion
22  for summary judgment, plaintiffs do not address this claim in
    their opposition.  The court interprets this silence as non-
23  opposition to defendants' motion on these grounds.  Furthermore,
    both Hansen and Bartaldo signed consent forms to search the cars,
24  although they assert that they were coerced into doing so with
    the threat of seizure.  (SDF at 5, ¶¶ 4-5).  However, neither
25  plaintiff can identify which defendant, if any, searched their
    vehicles.  As such, defendants' motion regarding this claim is
26  GRANTED.

27   Plaintiffs also assert that the officers performed an
    oral cavity search on Bernie Hansen.  The court will address this
28  assertion in its discussion of plaintiffs' excessive force
    claims.

24

869, 877 (9th Cir. 2004).  However, the search warrant need only

be reasonably specific, rather than elaborately detailed.  Id.

(quoting United States v. Rude, 88 F.3d 1538, 1551 (9th Cir.

1996)).  In this case, the search warrant authorized the seizure

of business documents, including paper documents and electronic

storage devices, such as magnetic tapes or CDs.  These types of

items are small, portable, and very easy to hide in drawers,

boxes, containers such as an urn, medicine cabinets, or in the

freezer.  Therefore, it was reasonable for the officers to infer

that the evidence they were authorized to seize could be found in

any of the places defendants searched.[15]  See United States v.

Williams, 687 F.2d 290, 293 (9th Cir. 1982) (upholding the search

of a lunch box because it was reasonable to infer that evidence

of marijuana cultivation, including documents, would be found in

the lunch box).

Plaintiffs contend that the officers were searching for

drugs, not documents, because when Mark Hansen asked the court

clerk for a copy of the Hansen v. EDD warrant, he was given a

search warrant relating to a search for methamphetamine with a

similar number.  Plaintiffs also assert that defendant Schubert

said that he expected officers to find large amounts of drugs and

cash at the residence during the search.  However, it is

irrelevant to this action whether the court clerk gave Mark

Hansen a copy of the wrong search warrant.  Further, assuming

---

[15]   To the extent that plaintiffs assert that officers took
ashes from the crematory urn, such seizure would likely exceed
the scope of the warrant.  However, plaintiffs do not identify
any defendant as the individual who took the ashes, nor do they
assert which agency the individual worked for.

that defendant Schubert made such a statement, it is also
irrelevant whether defendant Schubert expected to find drugs or
cash.  Defendants were reasonable in performing their search for
evidence of tax evasion.  As such, defendants' motion for summary
judgment regarding plaintiffs' claim that the search exceeded the
scope of the search warrant is GRANTED.

**D.   Excessive Force in Execution of the Search Warrant**

Plaintiffs Kelly Hansen and Bernie Hansen argue that
defendants violated their constitutional rights by using
excessive force against them during the execution of the search
warrant.  Whether law enforcement officials used excessive force
in the course of making an arrest is properly analyzed under the
Fourth Amendment's objective reasonableness standard.  <u>Graham v.
Connor</u>, 490 U.S. 386, 388 (1989).

> Determining whether the force used to effect a
> particular seizure is 'reasonable' under the Fourth
> Amendment requires a careful balancing of 'the nature
> and quality of the intrusion on the individual's Fourth
> Amendment interests' against the countervailing
> governmental interests at stake.

<u>Id.</u> at 396 (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)).
The reasonableness of a particular use of force must be evaluated
from the perspective of a reasonable officer on the scene.  <u>Id.</u>
A proper application of the reasonableness inquiry

> requires careful attention to the facts and
> circumstances of each particular case, including the
> severity of the crime at issue, whether the suspect
> poses an immediate threat to the safety of the officers
> or others, and whether he is actively resisting arrest
> or attempting to evade arrest by flight.

<u>Robinson v. Solano County</u>, 278 F.3d 1007, 1013-14 (9th Cir. 2002)
(internal quotations omitted); <u>see also</u> <u>McKenzie v. Lamb</u>, 738

26

F.2d 1005, 1011 (9th Cir. 1984) (the determination requires the analysis of factors such as "the requirements for the officers' safety, the motivation for the arrest, and the extent of the injury inflicted").

Defendants argue that the level of force used by officers while executing the warrant was reasonable under the circumstances.  Defendants also argue that even if the force was in some way excessive, the officers are protected from liability under the doctrine of qualified immunity.  The doctrine of qualified immunity protects from suit government officers who do not knowingly violate the law.  Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).  Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (citation omitted).  A law officer can establish qualified immunity by demonstrating (1) that the law governing the officer's conduct was not clearly established at the time of the challenged actions, or (2) that under the clearly established law, an officer could reasonably have believed that the alleged conduct was lawful.  See Katz v. United States, 194 F.3d 962, 967 (9th Cir. 1999); Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (observing that police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

The question of immunity generally is not one for the jury. Qualified immunity "'is an immunity from suit rather than a mere

1  defense to liability' . . . . [Therefore,] [i]mmunity ordinarily
2  should be decided by the court long before trial." <u>Hunter v.</u>
3  <u>Bryant</u>, 502 U.S. 224, 228 (1991) (citation omitted).  However, if
4  a genuine issue of material fact exists regarding the
5  circumstances under which the officer acted, then the court
6  should make the determination after the facts have been developed
7  at trial.  <u>Act Up!\Portland v. Bagley</u>, 988 F.2d 868, 873 (9th
8  Cir. 1993).

9       The initial inquiry that the court must make to determine
10 whether an official is entitled to qualified immunity is whether,
11 "[t]aken in the light most favorable to the party asserting the
12 injury, do the facts alleged show the officer's conduct violated
13 a constitutional right?"  <u>Saucier v. Katz</u>, 533 U.S. 194, 201
14 (2001) (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).  The
15 next inquiry is whether the constitutional right was clearly
16 established.  <u>Id.</u>  This inquiry must be taken in the light of the
17 specific context of the case.  The contours of the right must be
18 sufficiently clear that a reasonable official would understand
19 that what he is doing violates that right.  <u>Id.</u>  However, this
20 does not mean that an official action is protected by qualified
21 immunity unless the very action in question has previously been
22 held unlawful, but, rather, in light of pre-existing law, the
23 unlawfulness must be apparent.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739
24 (2002) (internal citations omitted).  The salient question is
25 whether the law at the time of the disputed conduct gave
26 defendants "fair warning that their alleged treatment of
27 plaintiffs was unconstitutional."  <u>See</u> <u>id.</u> at 741.  There must
28 exist a clearly established rule so that "it would be clear to a

28

reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 205-06.

### 1.   Kelly Hansen

Plaintiff Kelly Hansen asserts that she was sleeping in her room, in a detached section of the Hansen residence where she lived with her fiancé CJ Bartaldo, when she heard loud noises, including someone banging on her door. (RUF ¶ 10).  She went to the front door and tried to open it, but it was slammed forward toward her. (Dep. of Kelly Hansen ("K. Hansen Dep."), Ex. 10 to Sorgen Decl., 49:3-5).  Plaintiff threw up her hands because she thought it was going to hit her face. (<u>Id.</u> at 50:13-15).  She asserts that defendant Zambrana grabbed her by the front of her tank top and jerked her through the door opening. (<u>Id.</u> at 50:20-51-5).  In doing so, defendant Zambrana's hand grabbed her breast at the same time and ripped plaintiff's tank top. (<u>Id.</u> at 51:5-11).  Plaintiff's left breast was exposed. (<u>Id.</u> at 51:12-15). Plaintiff was pushed up against the wall with several guns pointed at her for two minutes. (<u>Id.</u> at 53:22-54:3).  Plaintiff did not realize that defendants were police officers for approximately fifteen minutes when she noticed that there were black and white cars on the property. (<u>Id.</u> at 54:21-55:3). Plaintiff asked Sergeant Ericson if she could change her shirt because her breast remained exposed. (<u>Id.</u> at 85:3-9).  Plaintiff also asked defendant Zambrana, defendant McCall, and defendant Schubert if she could change her shirt in order to cover herself. (<u>Id.</u> at 85:17-22; 86:18-20; 124:11-20).  Plaintiff was not allowed to change her shirt for several hours, after she had answered defendant Schubert's questions. (<u>Id.</u> at 123:24-124:20).

1    As set forth above, plaintiff Kelly Hansen has presented

2   evidence that she was attempting to open the doors to the

3   officers and comply with the search when she was grabbed from her

4   apartment, her top was ripped such that her breast was exposed,

5   and guns were pointed at her.  Then, for several hours, including

6   the time period when she was questioned by defendant Schubert,

7   plaintiff was not allowed to change her shirt in order to cover

8   herself.  As such, there are triable issues of fact regarding

9   whether defendants used excessive force against plaintiff Kelly

10  Hansen and whether her detention for several hours with her

11  breast exposed was unreasonable.

12    Defendants contend that they are entitled to qualified

13  immunity.  However, assuming that plaintiff's version of the

14  facts is true, at the time of the search, the law was

15  sufficiently clearly established to place a reasonable law

16  officer on notice that using this type of force against an

17  individual who was complying with a search and the failure to

18  allow her to cover her exposed breast for several hours while she

19  was detained is unlawful.  See McKenzie v. Lamb, 738 F.2d 1005,

20  1010 (9th Cir. 1984) (holding that the use of weapons,

21  restraining individuals by force, handcuffing, throwing

22  individuals against the ground, and failing to identify as law

23  enforcement is a violation of the Fourth Amendment where the

24  arrested individuals did not resist arrest); Summers, 452 U.S.

25  701-02 (holding that in order for the conditions of detention

26  during the execution of a search warrant to be reasonable, the

27  governmental interest must outweigh the intrusion); Franklin v.

28  Foxworth, 31 F.3d 873, 876 (9th Cir. 1994) ("A detention

30

conducted in connection with a search may be unreasonable if it
is unnecessarily . . . degrading."). Thus, defendants had "fair
warning that their alleged treatment of plaintiff was
unconstitutional." <u>Hope</u>, 536 U.S. at 741. Because there are
triable issues of fact as to whether the force used against
plaintiff Kelly Hansen and the conditions of her subsequent
detention were unreasonable, and because defendants had notice
that their alleged conduct was unconstitutional, the court cannot
find that defendants are entitled to qualified immunity at this
stage of the litigation.

Therefore, because plaintiff Kelly Hansen has presented
evidence demonstrating a triable issue of material fact regarding
the reasonableness of the seizure, defendants Zambrana, McCall,
and Schubert's motion for summary judgment in regards to this
claim is DENIED. However, because plaintiff Kelly Hansen
presents no evidence regarding defendant Ziegler's or defendant
Burson's action relating to this claim, defendant Ziegler's and
defendant Burson's motion for summary judgment regarding this
claim is GRANTED.

### 2. Bernie Hansen

Plaintiff Bernie Hansen asserts that he was awakened by his
locked bedroom door being kicked off the hinges. (Dep. of Bernie
Hansen ("B. Hansen Dep."), Ex. 10 to Sorgen Decl., 48:17-22).
Defendants Ziegler, Burson, and another officer entered the room,
carrying assault weapons and wearing a bullet proof vest. (<u>Id.</u>
at 51:2-22). Plaintiff was still laying down in bed, under the
covers, and the defendant Ziegler dragged him out of bed by the
right arm. (<u>Id.</u> 53:4-24). Defendant Ziegler then dragged him to

1   the entertainment center and pinned him up against it while he

2   and the other officers were holding him.  (<u>Id.</u> at 54:1-3).

3   Plaintiff's chin was pushed into the wood and a single barrel

4   shotgun was pushed up against his head.  (<u>Id.</u> at 55:10-21).

5   Defendant Ziegler handcuffed his hands in the back.  (<u>Id.</u> at

6   58:1-5).  Plaintiff contends that he did not say anything during

7   this period of time.  (<u>Id.</u> at 58:8-10).  Plaintiff also contends

8   that he did not swallow anything.  (<u>Id.</u> at 58:15-16).

9   Nevertheless, defendant Ziegler searched his mouth.  (<u>Id.</u> at

10  65:3-4).  Further, defendant McCall told Ziegler to search

11  plaintiff's mouth again.  (<u>Id.</u> at 65:10-19).  Plaintiff was

12  forced to remain in handcuffs for at least an hour.  (<u>Id.</u> at

13  73:18-23).

14      As set forth above, plaintiff Bernie Hansen has presented

15  evidence that he was sleeping when defendants kicked in his door,

16  dragged him out of bed, pinned him up against the entertainment

17  center with a shot gun, handcuffed him, and performed an oral

18  search.  Plaintiff was then kept in handcuffs for over an hour.

19  Plaintiff's evidence also demonstrates that Bernie Hansen was not

20  resisting the officers, was not speaking to the officers, and had

21  not swallowed anything.  As such, there are triable issues of

22  fact regarding whether defendants used excessive force against

23  plaintiff Bernie Hansen and whether his detention for at least an

24  hour in handcuffs was unreasonable.

25      Defendants contend that they are entitled to qualified

26  immunity because the law applicable to these circumstances was

27  not clearly established at the time of the search.  In regards to

28  the use of handcuffs during the detention, defendants are

32

1   correct.  At the time of the search, it was not clearly

2   established in the Ninth Circuit, that handcuffing a person and

3   detaining him in handcuffs during a search for evidence would

4   violate his Fourth Amendment rights.  <u>See</u> <u>Meredith v. Erath</u>, 342

5   F.3d 1057, 1063 (9th Cir. 2003).  It was not until 2003 that the

6   Ninth Circuit clarified that this conduct, absent justifiable

7   circumstances, constituted a Fourth Amendment violation.  <u>Id.</u>

8   However, assuming that plaintiff's version of the facts is true,

9   at the time of the search, the law was sufficiently clearly

10  established to place a reasonable law officer on notice that

11  using this type of force against an individual who was complying

12  with a search is unlawful.  <u>See</u> <u>McKenzie v. Lamb</u>, 738 F.2d 1005,

13  1010 (9th Cir. 1984) (holding that the use of weapons,

14  restraining individuals by force, handcuffing, throwing

15  individuals against the ground, and failing to identify as law

16  enforcement is a violation of the Fourth Amendment where the

17  arrested individuals did not resist arrest).  Therefore,

18  defendants had "fair warning that their alleged treatment of

19  plaintiff was unconstitutional."  <u>Hope</u>, 536 U.S. at 741.  Because

20  there are triable issues of fact as to whether the force used

21  against plaintiff Bernie Hansen was unreasonable, and because

22  defendants had notice that their alleged conduct was

23  unconstitutional, the court cannot find that defendants are

24  entitled to qualified immunity at this stage of the litigation in

25  regards to the force used in defendants' execution of the search

26  warrant.

27      Therefore, because plaintiff Bernie Hansen has presented

28  evidence demonstrating a triable issue of material fact regarding

the reasonableness of the force used, defendants Zeigler, Burson, and McCall's motion for summary judgment in regards to this claim is DENIED.  However, because plaintiff Bernie Hansen presents no evidence regarding defendant Zambrana's or defendant Schubert's action relating to this claim, defendant Zambrana's and defendant Schubert's motion for summary judgment regarding this claim is GRANTED.

## II.   Damages

Plaintiffs assert that they have suffered damages for lost income and future profits arising from violations of the Fourth Amendment.  Specifically, plaintiffs assert that they suffered losses to their business and to their business reputations as a result of the search and seizure.  However, as set forth above, only plaintiffs Bernie Hansen and Kelly Hansen have presented triable issues of fact regarding claims for violations of the Fourth Amendment.[16]  There is no connection between the claims for excessive force and the claimed damages for lost income and future profits.  Therefore, defendants' motion for summary judgment regarding plaintiffs' claim for lost income and future profits is GRANTED.

/////

/////

/////

/////

---

[16]   Plaintiffs' basis for claiming damages for SGE's business losses is that the warrant was so vastly overbroad that it violated plaintiffs' rights.  Plaintiffs did not allege a claim on this basis in any of their filed complaints, and therefore, the court will not consider this argument.

**CONCLUSION**

For the foregoing reasons, defendants' motion is GRANTED in part and DENIED in part.  Plaintiffs Bernie Hansen and Kelly Hansen have demonstrated triable issues of fact in regards to their claims for excessive force and unreasonable search and seizure in violation of their Fourth Amendment rights against defendants.  However, plaintiffs have failed to raise triable issues of material fact in order to withstand summary judgment with respect to all other asserted claims.

IT IS SO ORDERED.

DATED: September 28, 2006

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE